Our final case of the day is Caldwell v. United States Mr. Greenberg Good morning. In this case, Ms. Caldwell engaged an attorney who did absolutely nothing. And when she pled guilty and then got sentenced, she filed a 2255 petition, went before the district court, and the district court said, well, you pled guilty based on the advice of your attorney, and what are you complaining about now? It's circular reasoning. The district court held a hearing, took evidence, and found that Caldwell was lying about the relationship between her and the attorney, and that the attorney told the truth. Are you contending that those findings are clearly erroneous? Well, I believe that the court found that the attorney lied during the hearing, and that specifically said that the court found the attorney wasn't credible. The court found that the attorney lied about the amount of time that he had spent with Ms. Caldwell. The attorney testified that he had spent a lot of time with Ms. Caldwell. They had had all sorts of meetings, and that it turned out that they had only had a couple of meetings. It was proven by his billing records. I don't think the court found that Ms. Caldwell lied. What the court said was that Ms. Caldwell had in her head and in her hands the records that he thought that she should have given to the attorney, and she didn't give them to the attorney, but, in fact, the attorney said that he never wanted to see them. The court questioned her credibility on multiple occasions, including saying, the shifting ground of what Ms. Caldwell is saying undermines the veracity of what she's telling me now. He found her testimony that Rosenberg promised her a sentence of probation not credible. I could go on and on. The court made very clear credibility findings about your client. Right. That was about certain things about the sentence and so forth. And about her plea. He made very specific credibility findings. I'm not sure how you could get up here and say that the judge found her lawyer not credible, but found her credible. Well, on things about the plea and the plea colloquy, I would agree that he had problems with what she had said at the plea colloquy. But we're going behind that. We're going about why she pled guilty, and I think that's what you have to look at. You can't look at just the plea colloquy that took place in the courtroom. So I go back to the question that Judge Easterbrook asked you. The court held a hearing. The court made credibility findings. Do we have to find the district court's findings clearly erroneous? I don't think the credibility findings necessarily matter here, Your Honor. I think that what matters is what occurred, what the lawyer did, and the advice that he gave. Look, the district court held a hearing, found her client not credible, and relied on what your client said under oath in open court at the time of the plea. And it doesn't look like your client is volunteering to plead guilty to perjury for those statements in open court. Those were the two things the district court relied on, and it's awfully hard to get around them. I think that she was saying – first of all, when she said those things at the district court, I think she was a bit nervous when she was saying those things, and the court was questioning her in open court because if you look at the totality – She testified under oath, and he made specific credibility findings. Nervousness – he didn't find she was nervous and therefore not answering truthfully or completely. You're asking us to come out differently than the district court did. Well, but what the district court found was the district court found that when she pled, that she had pled based upon the advice of the attorney and that it had been voluntary. But if you look at that finding and you look at what the attorney did, the attorney never looked at the discovery. The attorney never did the things that this court has said that an attorney should do. Mr. Greenberg, before you go too much further, I want to clarify just a couple things about the scope of your appeal. You raised multiple issues before the district court, and I think the district court lumped them into five groups. You are only appealing her claim of ineffective assistance counsel based on failure to investigate and a coercive plea. Is that correct? Yes. One of the rulings from the court was granting habeas relief to your client, finding that counsel was ineffective for failing to file a timely notice of appeal. You asked the court to re-enter the judgment order so your client could appeal. The court did re-enter the judgment order. It doesn't look like your client appealed. Is that correct? That is correct because essentially— So she was granted the relief on that piece, but you did not—she decided and an appeal was not taken from her. Right. It wasn't going to ultimately at the end of the day get her anywhere. Okay. Correct. But if you look at the things that this court has said an attorney is supposed to do in connection with the guilty plea, he did not do any of those things. So the predicates for the plea of guilty were not present. The things that she needed, the knowledge that she needed, the attorney said he took the word of the prosecutor that the evidence was overwhelming. The attorney said it didn't matter that the very witnesses they needed to prove the case were deceased. He relied on—he falsely told her that the government had medical experts that did not exist that were ready to testify that these people couldn't have agreed to these investments when there were no medical experts. So yes, she pled guilty and yes, she said these things at court, but these were all based on false representations that were made to her by her own counsel. And if you go back in time to that, this court has said that an attorney should know the facts of a case before they advise someone to plead guilty and that they have an obligation to do that. So if you look at those facts, then I think that we have to say that her plea in no way could have been knowing and voluntary and that she definitely received ineffective assistance of counsel. I'll reserve the rest of my time for that. Thank you. Certainly, counsel. Ms. Murphy. Good morning. May it please the court opposing counsel. My name is Madeline Murphy. I'm an assistant U.S. attorney. I'm asking this court to affirm the district court's denial of the Section 2255 petition because the district court correctly found that Caldwell's guilty plea was not induced by coercion, was not induced by false promises that she was going to receive a sentence of probation and was not the product of ineffective counseling that a guilty plea was in her best interests under these circumstances. To respond to counsel's claim that Caldwell's attorney did, quote-unquote, nothing in terms of investigating the case and determining whether a guilty plea would be in her best interest or going to trial would be in her best interest, the district court found Mr. Rosenberg to be credible in his testimony that he did review the evidence prior to advising her the guilty plea was in her best interest and the billing records submitted at the hearing by the defense, by the petitioner, showed that in the month of September 2023, shortly after Mr. Rosenberg was retained, he spent 53 hours reviewing the FINRA testimony, the records of Canal Productions, the film production company that Ms. Caldwell had incorporated, and the documents from the public guardians case. The FINRA testimony alone would have caused any reasonable attorney to realize that Ms. Caldwell had significant criminal exposure here. She admitted under oath to having financial relationships with these three victims in this case, that they had been clients of hers in her business as a financial advisor for Citibank, that she did engage them in investments in her film business, and she testified extensively under oath before FINRA to the effect that the $1.4-plus million that these three victims paid to her over the course of five years was spent essentially on reimbursing herself for expenses in film production that she was never able to substantiate. Any attorney would have looked at the Canal Production bank accounts and would have realized that some nearly $400,000 in checks came out of that account and were written directly to Helen Caldwell, that an additional $300,000-plus charges were made on the Canal Productions account with the Canal Productions debit card, which the defendant or the petitioner used on nearly a daily basis for five years for personal expenses, and that an additional some $350,000 came out of the Canal account in direct checks to pay for expenses that appear totally unrelated to any sort of film production expenses, such as paying her own lawyers for litigation unrelated to the films, paying for repair and renovation of her house, paying for women's clothing boutiques, her cell phone bill for veterinary bills and what have you. Any competent attorney would have been able to realize this just from examining those two pieces of evidence which he received early on in the game, that there was significant exposure here and that it was sound strategy to consider a guilty plea. He pressed Ms. Caldwell to point him in a direction to find something to substantiate her claim that all of these expenses were quote-unquote reimbursements and she was unable to give him any document. She was unable to provide any substantive evidence to show that the vast majority of these personal expenses that she spent the victim's money on were any sort of reimbursements. So the district court correctly found, and the petitioner has not shown otherwise, that Mr. Rosenberg spent sufficient time in reviewing the evidence and in that his advice to consider a guilty plea was sound under these circumstances. Now in terms of the district court's determination that Ms. Caldwell had not been either coerced into a guilty plea or had been induced into a guilty plea by false promises that she was going to receive a sentence of probation, the district court examined Ms. Caldwell's guilty plea colloquy where she admitted under oath that she had not been coerced, that she'd had enough time to talk to her attorney, that no promises had been made to her and that her attorney had spent enough time to her satisfaction explaining the case to her and also compared that with her hearing testimony and with several months of email traffic back and forth between the petitioner and Mr. Rosenberg in an effort to glean any evidence or information there to the effect that Mr. Rosenberg had either coerced her or had made false promises to her. And the combination of her under oath assertions that this was not the fact and the fact that the court could not find any documentation, any emails or any correspondence or what have you that would substantiate any coercion or any false promises bolsters the court's determination that she simply was not credible in her hearing testimony. Now there is a presumption of verity that accompanies the statements made in a guilty plea that is not easily overcome and the petitioner has not presented any evidence that would cause either the district court or this court to find that that presumption was overcome. He simply stated, well, this is a circular argument. She was given bad advice and then she essentially lied under oath about coercion, about promises, and about her attorney's preparation and engagement with her in advising her how to resolve the case. He hasn't come anywhere near to showing any evidence whatsoever, much less any evidence that would overcome that presumption that her under oath statements here were entirely correct. And this isn't a situation where Judge Canelli simply sat back and said, well, I believed her at the time of the guilty plea colloquy and I just don't believe her now. He was very careful in reviewing the record, reviewing these months worth of emails to try to determine whether she was telling the truth then or she was telling the truth now. And he also explained very carefully in his ruling how his plea colloquy was designed to ferret out situations where people have been coached or promised or coerced. He specifically puts in a number of questions requiring the defendant to answer no in an effort to ferret out situations where they've simply been told just answer yes to all the court's questions or they're on some sort of automatic pilot that they simply go ahead and just acknowledge everything that the court is saying. As to Petitioner's claim that she was nervous in her guilty plea, of course she was. This is a life changing event. These are serious circumstances and the outcome of a guilty plea in a criminal case usually leads to negative consequences. But this was not an unsophisticated person. Ms. Caldwell was approaching 60 years old. She was a college graduate. She'd been in the financial industry, I believe, for 30 years. This isn't someone who, for example, a 20-year-old poorly educated person who's totally unsophisticated who would have been horrifically intimidated by the circumstances. In short, there's really nothing in the record that would support a person of Ms. Caldwell's background given the representation that she was given and given the circumstances here that would support overcoming that. I'm not sure what you're saying. Are you saying that in future cases the United States will not hold declarations in open court under oath against a person pleading guilty against them unless they have a college education? No, Your Honor. I'm not saying that. So why is this case any different? The United States routinely says that some drug dealer who never graduated from high school made statements in open court when pleading guilty, and they are binding. You don't want to distinguish this on that ground unless you're going to give up the fundamental argument that statements under oath are binding. Judge, I think you're correct, and I will withdraw that argument. All in all, the defense has not given this court any reason to overturn Judge Canelli's careful and well-documented findings that Ms. Caldwell's attorney performed effectively and that her guilty plea was not the product of any coercion or any false promises. Unless the panel has any further questions for me. Thank you, Ms. Murphy. Thank you. Anything further, Mr. Greenberg? Yes. I understand when you're talking about the credibility, and I took a look back at the record a little bit while Ms. Murphy was arguing, and I understand what the court's saying about the guilty plea and the testimony at the hearing and so forth. But I urge you to look, when you're looking at the brief and you're looking at the record, to look at the emails and look at the comments leading up to the guilty plea and look at the exchanges where Ms. Caldwell is repeatedly telling the attorney that she is not guilty, that she doesn't want to plead guilty, and the attorney is writing a script for her and saying this is what you need to do. And understand that he knows nothing about the case, and his testimony at the hearing, contrary to what Ms. Murphy said, is he said he did not have to know the facts of the case. The information from the other proceedings that he had was, as he put it, water under the bridge, and it didn't matter to his assessment of this case. He said that it didn't matter that the government didn't have any witnesses that could testify because it was an accounting case. It didn't matter it was a paper case as far as he saw it when, in fact, it was a fraud case. And, yes, Ms. Caldwell made these admissions under oath because she had an attorney telling her these are the things you have to say because while it's not guaranteed you have no criminal history, you're going to get probation. And then he filed a two-and-a-half-page sentencing memo, and you've seen lots of sentencing memos, where he cited Ty Warner is the only case, is a light case, which is not a light case, and said give her probation and submitted letters from people saying that she was not guilty, including a letter, by the way, from one of the three victims saying that there was nothing wrong and no one had been defrauded. And when you look at it and then you look at what happened, you'll understand. And, yes, Ms. Caldwell got up at the hearing and said, I pled guilty. And she told Judge Connelly, when I pled guilty, I was lying when I said that I did these things to you. And if the government wants to indict her for perjury, they can indict her for perjury. She understood that when she was testifying. I can tell you that. She understood that. And if the government does that, that's the consequence that she'll have of that, and she'll have another case to file. She doesn't even have to indict her for perjury. She can be indicted under the inconsistent declaration statute. Well, whatever statute they choose, there's lots of statutes, as I've learned over the years. But if you look at all of the things leading up to this, this was someone who did absolutely nothing and just said, plead guilty. And under the case law, you hire an attorney because the attorney is supposed to do something. They're supposed to know the facts. They're not supposed to say, the guy called me up on the telephone. He said they have a really good case. Plead guilty because I trust him. And that's what happened in this case. And that's a bad precedent, and that should never happen. Thank you. Thank you, counsel. The case is taken under advisement, and the court will be in recess. Thank you.